UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| SCOTT L. HEAGNEY, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **CIVIL ACTION** |
| | ) | **NO. 15-40024-TSH** |
| LISA A. WONG, et. al, | ) | |
| Defendants. | ) | |

## ORDER

**May 18, 2016**

Hennessy, M.J.

By Order of Reference dated December 22, 2015, pursuant to 28 U.S.C. § 636(b)(1)(A) (Docket #33), this matter was referred to me for a ruling on Plaintiff Scott L. Heagney's Motion for a Protective Order (Docket #30). Defendants Lisa A. Wong and the City of Fitchburg (the "City Defendants") have filed a response. (Docket #36). A hearing was held on the motion on May 13, 2016. This matter is now ripe for adjudication. For the reasons that follow, the Motion for a Protection Order is DENIED.

I.   BACKGROUND

This case arises out of Heagney's application for the position of Chief of Police for the City of Fitchburg in 2013. (Compl. at ¶¶ 1, 25).[1] At the time of his application, Heagney was the Resident Agent-in-Charge of the Rochester, New York Field Office of the Bureau of Alcohol, Tobacco, and Firearms ("ATF"). (Id. at ¶ 14). The City Defendants assert that, on his application, Heagney indicated that his only prior law enforcement employment, apart from the ATF, was with

---

[1] The complaint is available at Docket #13 pages 7 through 46.

the Town of Franklin from 1987 to 2001 and that he had never been disciplined during his law enforcement career. (Docket #58 at 1). When asked on the application whether there were any issues that he was aware of that would arise during a background investigation, Heagney answered in the negative. (Compl. at ¶¶ 28-29).

On March 10, 2014, Fitchburg Mayor Wong announced that Heagney was her nomination for police chief. (Id. at ¶ 32). Heagney's hiring was contingent on approval by the Fitchburg City Council. (Id. at ¶ 34). Mayor Wong tasked Defendant Badgequest, Inc. to conduct a background investigation of Heagney prior to the City Council vote. (Docket #58 at 1-2). Prior to that vote, the Mayor, the City Council, and several area newspapers received an anonymous letter stating that Heagney had worked, not only for the Franklin Police Department, but also for the Attleboro and Falmouth Police Departments, and that he had disciplinary issues in his past. (Compl. at ¶¶ 59, 62). The letter also stated that Heagney had been brought up on charges of pistol-whipping in the past, but that the case had been dismissed when the victim refused to testify. (Id. at ¶ 62). Heagney maintains that these statements were false and that the Defendants "failed to fully investigate the truth or accuracy of any of these statements." (Id. at ¶¶ 63, 69).

On March 18, 2014, Mayor Wong withdrew her nomination of Heagney and informed the City Council by email of her decision. (Id. at ¶¶ 41-42). After withdrawing the nomination, Mayor Wong made statements to the local press that Heagney was "not forthcoming" and "withheld key information" about his "resume" and his "character." (Id. at ¶ 51). The Worcester Telegram & Gazette published an article on the matter on March 20, 2014, in which they quoted a text message sent from Mayor Wong stating, "The city is not interested in pursuing a candidate for police chief who is not forthcoming with his resume. We are focused on moving forward with a new search." (Id. at ¶ 52). The same article states "Ms. Wong claims [Mr. Heagney] . . . was not forthcoming

on his resume about his work experience or about a court case on alleged assault and battery and other charges when he was 21." (Id. at ¶ 53) (alterations in original). Heagney claims that each of Mayor Wong's statements was false and made with knowledge of, or in reckless disregard of, its falsity. (Id. at ¶ 56). Heagney also asserts that Mayor Wong made these statements without giving Heagney an adequate opportunity to demonstrate the falsity of the statements and to clear his name. (Id. at ¶ 57).

In their brief, the City Defendants state that, when Heagney was provided the anonymous letter, he admitted that he had also worked at the Falmouth Police Department between 1990 and 1993 and had been charged with the crimes of Assault and Battery with a Dangerous Weapon, Assault and Battery, and Threatening to Commit a Crime in 1988 while he was a police officer in Franklin.[2] (Docket #58 at 2). He stated that he had been acquitted of those crimes and provided a Polygraph Report of an examination conducted on April 12, 1988, indicating that he had answered truthfully when denying that he had threatened a woman with a gun. (Id.). Heagney also provided a newspaper article regarding the acquittal. (Id.).

Heagney commenced this suit on January 16, 2015, asserting claims sounding in defamation, unlawful employment practices, violations of the Massachusetts Criminal Offender Record Information statute and regulations, violations of 42 U.S.C. § 1983, invasion of the right of privacy, infliction of emotional distress, and tortious interference with advantageous relationships, naming as Defendants Mayor Wong, the City of Fitchburg, Badgequest, Stephen H. Unsworth, and John Doe (the author of the anonymous letter). (Compl.).

---

[2] In his complaint, Heagney states that, in 1988, while a Franklin Police Officer, he was charged with two counts of Assault and Battery with a Dangerous Weapon, two counts of Threatening to Commit a Crime, and one count of Assault and Battery. (Compl. at ¶ 79). The alleged victim testified at the trial. (Id.). Heagney was found not guilty at trial in Wrentham District Court and the records were subsequently sealed by court order in about 2001. (Id. at ¶ 80).

On December 15, 2016, Heagney was deposed by the City Defendants. (Docket #30 at 1). During the deposition, counsel for the City Defendants attempted to inquire into the underlying facts relating to criminal charges of which Heagney was acquitted in 1989 and the records for which were sealed in approximately 2001. (Id.). Heagney's counsel instructed him "not to answer questions about the underlying facts underlying the assault and battery." (Docket #58 at 8-9). Heagney's counsel further instructed him not to answer anything concerning what was in his personnel file concerning this incident. (Id. at 9-10). At the end of the full-day deposition, the City Defendants' counsel stated that they were suspending the deposition. (Docket #30 at 2). On December 21, 2015, Heagney filed a motion for a protective order limiting the scope of his deposition to prohibit the City Defendants from inquiring into the facts underlying the sealed criminal acquittal. (Docket #30).

II.     STANDARD

The scope of discovery generally extends to:

any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.[3]

Fed. R. Civ. P. 26(b)(1). Relevant evidence is defined in Federal Rule of Evidence 401 as evidence having "any tendency" to make a fact that is of consequence in determining the action more or less probable than it would be without the evidence.

---

[3] The citation is to Federal Rule of Civil Procedure 26(b) as amended on December 1, 2015. The Supreme Court has ordered that "the revised rules 'shall govern in all proceedings in civil cases thereafter commenced and, insofar as just and practicable, all proceedings then pending." Wertz v. GEA Heat Exchangers Inc., No. 1:14-CV-1991, 2015 U.S. Dist. LEXIS 167947, at *5 n.1 (M.D. Pa. Dec. 16, 2015) (quoting Letter of Transmittal to Congress, April 29, 2015). This court sees no reason why the amended version of Rule 26(b) should not be applied in the instant matter.

"At any time during a deposition, the deponent or a party may move to terminate or limit it on the ground that it is being conducted in bad faith or in a manner that unreasonably annoys, embarrasses, or oppresses the deponent or a party." Fed. R. Civ. P. 30(d)(3)(A). "The court may order that the deposition be terminated or may limit its scope and manner as provided in Rule 26(c)." Fed. R. Civ. P. 30(d)(3)(B).

Rule 26(c) provides that, if a party or any person from whom discovery is sought shows good cause, the court may issue an order to protect that party or person "from annoyance, embarrassment, oppression, or undue burden or expense[.]" Fed. R. Civ. P. 26(c)(1). "Rule 26(c) is highly flexible, having been designed to accommodate all relevant interests as they arise. The 'good cause' standard in the Rule is a flexible one that requires an individualized balancing of the many interests that may be present in a particular case." Gill v. Gulfstream Park Racing Ass'n, 339 F.3d 391, 402 (1st Cir. 2005) (quoting United States v. Microsoft Corp, 165 F.3d 952, 959-60 (D.C. Cir. 1999)) (alterations omitted). The burden is on the party seeking the more restrictive protective order to show good cause under Rule 26(c). Pharmachemie, B.V. v. Pharmacia, Inc., No. 95-40085-NMG, 1998 U.S. Dist. LEXIS 2192, at *4 (D. Mass. Jan. 30, 1998) (Swartwood, M.J.). To show good cause, the party seeking the protective order must demonstrate a particular need for protection; "[b]road allegations of harm, unsubstantiated by specific examples or articulated reasons, do not satisfy the Rule 26(c) test." Cipollone v. Liggett Group, Inc., 785 F.2d 1108, 1121 (3d Cir. 1986), quoted in Pharmachemie, 1998 U.S. Dist. LEXIS 2192, at *4.

III.   ANALYSIS

Heagney asserts that the sealed criminal acquittal and the underlying facts related to the charges are legally protected information that the Defendants cannot inquire about in Heagney's deposition. (Docket #31 at 3). Heagney argues that the information sought is protected under both

5

Massachusetts General Law chapter 151B, § 4(9) and Massachusetts General Law chapter 276, § 100A. I address each in turn.

Section 4(9) of Massachusetts General Law chapter 151B makes it an unlawful practice

> [f]or an employer, himself or through his agent, in connection with an application for employment, or the terms, conditions, or privileges of employment, or the transfer, promotion, bonding, or discharge of any person, or in any other matter relating to the employment of any person, to request any information . . . regarding: (i) an arrest, detention, or disposition regarding any violation of law in which no conviction resulted[.]

Heagney argues that a legal action brought against a prospective employer under this statute is a "matter relating to the employment of any person," thereby barring the Defendants' inquiry into the matters at issue. (Docket #31 at 4). However, not all of Heagney's claims against the Defendants sound in unlawful employment practices. Heagney has asserted a claim for defamation in his complaint, (Compl. at ¶¶ 126-32), and, in fact, at the hearing on the motion, Heagney's counsel stated that the case was principally a defamation case. The court does not see this defamation claim as relating to Heagney's employment, and, therefore, the statute, which is "quite narrow in scope," Bynes v. Sch. Comm. of Boston, 411 Mass. 264, 269 (1991), does not prohibit the Defendants from deposing Heagney about the sealed criminal acquittal and the underlying facts related to the charges.[4] To hold otherwise would create two sets of discovery rules for parties defending the same claims – a prospective employer facing a defamation claim would be limited in discovery in a way that a non-prospective employer would not. See id. (holding that Mass. Gen. Laws ch. 151B, § 4(9) only affects an employer's ability to request certain criminal record

---

[4] Having found that the statute does not apply with respect to the defamation claim, the court makes no finding as to whether the statute would bar the Defendants from deposing Heagney concerning the matters at issue if only unlawful employment practices claims had been filed. The court notes that, at the hearing, Heagney's counsel represented that there was no case law supporting the proposition that Massachusetts General Law chapter 151B, § 4(9) applies to litigants.

6

information from employees and potential employees).  Heagney has cited no authority for this proposition nor is this court aware of such authority.

Section 100A of Massachusetts General Law chapter 276 provides for the sealing of criminal records upon the request of any person having a record of criminal court appearances and dispositions within Massachusetts.  Pursuant to this section, such sealed records shall not "operate to disqualify a person in any examination, appointment or application for public service in the service of the commonwealth or of any political subdivision thereof; nor shall such sealed records be admissible in evidence or used in any way in any court proceedings or hearings before any boards or commissions[.]"  Id.  The principal benefit which accrues to a person whose record is sealed is that such person may state on employment applications that he has no record of arrest or conviction, and the Commissioner of Probation must corroborate this statement.  Commonwealth v. Vickey, 381 Mass. 762, 765 (1980).  Heagney asserts that this statute proscribes the Defendants from asking Heagney about the facts underlying the charges in his sealed criminal case.  (Docket #31 at 4).  However, it is Heaney himself who has placed these facts at issue.

In his complaint, Heagney states, "Had the Defendants fully investigated the accuracy of the scurrilous claims made in the anonymous letter, or given Mr. Heagney an adequate opportunity to demonstrate the falsity of the statements and to clear his name, they would have discovered that each was false or misleading."  (Compl. at ¶ 76).  Included in the anonymous letter was the allegation that Heagney had faced charges in relation to pistol whipping an individual that were dismissed because the victim refused to testify.  (Compl. at ¶ 62).  In his complaint, Heagney alleges that this statement is demonstrably false.  (Id. at ¶ 63).  While Heagney argues in his reply that the principal issue in this case is not whether the City should have completed its investigation

of the allegations in the anonymous letter, he does state that it has "some bearing" on his claims. (Docket #46 at 3).

The sealed record statute "does not operate to erase" the fact that a criminal case was instituted, it "seeks simply to ensure confidentiality." Rzeznik v. Chief of Police, 374 Mass. 475, 482 (1978). Where, as here, Heagney himself has put the matter at issue, he cannot use the sealed record statute as a sword to prevent the Defendants from investigating the truth of his allegations. See id. ("There is nothing in [Mass. Gen. Laws ch. 276, § 100A] or the legislative history to suggest that, once the fact of a conviction is sealed, it becomes nonexistent, and hence untrue for the purposes of the common law of defamation.").

For these same reasons, Heagney's assertion that the facts underlying his sealed criminal acquittal are not relevant or proportional to the needs of this case as they have no real bearing on any claim or defense in this action, (Docket #31 at 5-6), also fails. Heagney has clearly put the facts underlying the assault and battery at issue. The information is relevant to both the substance of his claims and the amount of damages sought. Heagney seeks compensatory damages for injuries including reputational harm. (Compl. at p. 39). The facts underlying the assault and battery potentially contributed to Heagney's reputation, both personal and professional, and, hence, are relevant to the amount of damages that Heagney's reputation may have suffered as a result of the alleged defamatory statements. Therefore, the Defendants are entitled to depose Heagney on this subject.

IV. CONCLUSION

For the foregoing reasons, the Motion for a Protective Order (Docket #30) is DENIED.

/S/ David H. Hennessy
David H. Hennessy
UNITED STATES MAGISTRATE JUDGE
